Cook *v.* Rhea.

4-5540                                   127 S. W. 2d 634

Opinion delivered April 24, 1939.

*Ohmer C. Burnside,* for appellant.

*W. W. Grubbs,* for appellee.

Smith, J. Appellant and appellee were rival candidates for the office of county examiner for Chicot county in the election held in the county seat of that county on Saturday, January 14, 1939, pursuant to § 11669, Pope's Digest, which reads in part as follows: "On the first, second or third Saturday in January in every odd year hereafter the County Judge in every county in the State of Arkansas shall call a meeting of duly licensed teachers residing in the respective county or engaged in teaching in the county. Said meeting shall be at a court house in the county. The purpose of this meeting shall be to vote upon the candidates for the office of County Examiner. At the beginning of the meeting the County Judge shall compile a roll of the qualified per-

sons present, said roll to consist of duly licensed teachers who reside in the county or actually engage in teaching in the county. After this roll is compiled, the names of the candidates for County Examiner shall be presented to the group after which the qualified persons present shall cast secret votes for the candidates nominated. The votes shall be counted by tellers appointed by the County Judge, one teller being appointed to represent each candidate. If there are more than two candidates and one does not receive a majority of all votes cast on the first ballot, the two candidates receiving the highest number of votes shall be voted upon by a second ballot in the same manner as prescribed for the first ballot. The candidate receiving the majority vote on the second ballot shall be the winner. In case of a tie vote balloting will continue until one candidate receives the majority vote. In no instance shall a teacher vote in more than one county during one year. . . ."

It will be observed that this section does not expressly require the use of printed ballots, but does require the school teachers of the county who attend the meeting or election to ". . . cast secret votes for the candidates nominated" and although the use of printed ballots is not required, such ballots were provided for use at the election. The printed ballots read as follows:

No.
Official Ballot

Saturday, January 14, 1939
Court House, Lake Village, Arkansas

Cross out or scratch off the one for
whom you do not wish to vote

For County Examiner
(Vote for One)
Mrs. Robert W. Rhea
E. W. Cook

The tellers holding the election excluded three ballots, and counted the remainder, and the result of their

count was to give appellant, Cook, 79 votes and appellee, Mrs. Rhea, 78. At the trial of the election contest in the circuit court, from which is this appeal, the excluded ballots were marked Exhibits 1, 2 and 3, respectively. The circuit court excluded ballot made Exhibit 1, but counted ballots made Exhibits 2 and 3, and the result of that action was to increase the vote of Mrs. Rhea from 78 to 80, thus giving her a majority of all the votes cast at the election and declaring her to have been elected.

It was stipulated that in the two prior elections held under act 184 of the acts of 1935, page 495, of which § 11669, Pope's Digest, is a part, no printed ballots were provided, and that blank slips of paper were handed to the voter, with directions to write thereon the name of the person for whom the teacher wished to vote, and that the voting in said two prior elections was held in this manner. It was also stipulated that when the teachers assembled to hold the election here contested, the county judge called the meeting to order, and exhibited one of the printed ballots and explained that they contained the printed names of the candidates, and that the voters would cross out or scratch off the name of the candidate for whom they did not wish to vote, and that if they did not wish to vote for either of the candidates whose names were printed on the ballots, they might write in the name of some third person and scratch off the names of the other two.

It is conceded by appellant that ballot marked Exhibit 1 was properly excluded by the court; and we concur in that view. On this ballot, above the name of Mrs. Robert W. Rhea, but not through or across the name, appears a short irregular line, and the letter "S" in the abbreviation "Mrs." is bisected by a short dash, about the length of the hyphen used in punctuation. The marking of this ballot was such that the court below was fully warranted in finding that the elector teacher who cast it had not indicated an intention to erase the name of either candidate appearing on the ballot, and it was properly excluded from the count.

The teachers voting the ballots marked Exhibits 2 and 3 did not use the printed side of the ballot, and did not cross out or scratch off the name of either candidate there printed, but on the reverse side of the ballot they each wrote the name of Mrs. Rhea. These ballots, indorsed with the initials of one of the tellers, was folded to conceal the name of the candidate voted for, so that each was a secret ballot.

Why those teachers casting ballots 2 and 3 did not use the printed ballot does not appear. They may have been belated arrivals who did not hear the announcement of the county judge as to how the election would be held, but who, remembering how the former elections had been held, neglected to observe and read the ballot furnished them by the tellers when they voted. But the right of these elector teachers to vote is not questioned, nor is there any doubt as to the candidate for whom they intended to vote. They each wrote the name of Mrs. Rhea on the ballot. The insistence is that they did not express their intention in the manner required by law, and that the ballots should not be counted for that reason.

While it is probably true, as appellant contends, that the General Election Law governs the manner in which the election should have been held insofar as it is applicable, it is also true that § 11669, Pope's Digest, requires only that the choice of candidates be made by secret ballot, and the teachers casting ballots 2 and 3 cast secret ballots, and, as we have said, there is no doubt as to the candidate for whom they intended to vote.

Had blank pieces of paper been used in this election, as was done at the two prior elections held pursuant to this section of Pope's Digest, it would hardly be contended that the election was a nullity, as the law does not require the use of printed ballots.

The selection of the county examiner is as much in the nature of a convention as it is of an election. The statute refers to it as a "meeting", presided over by the county judge, at the beginning of which that official compiles a roll of the qualified electors present. It is not required that the "meeting" shall remain in session dur-

ing the hours and for the length of time during which the poll of voters must remain open in ordinary elections. The statute contemplates that candidates may be placed in nomination, and it would, no doubt, be proper and within the contemplation of the act for nominating speeches to be made extolling the qualifications of suggested persons to fill the office, all under the supervision of the county judge as chairman of the meeting. Thereafter the teachers vote by secret ballot for the persons nominated, or for other eligible persons, and tellers are appointed by the county judge to count the votes, and if no one receives a majority, a second ballot is taken, at which only the two candidates receiving the highest number of votes shall be voted upon. This is a proceeding for which the General Election Law makes no provision. One or the other, or both, of those persons may not have had their names printed on the ballot, in which event no use could be made of the printed ballot except to write on the blank side thereof the name of the one of the two of these highest candidates preferred by the elector, and this was the manner in which the electors who cast ballots numbered 2 and 3 had voted in this case.

We conclude, therefore, that the court below was correct in holding that appellee had received a majority of the votes cast at the election or meeting and had been elected, and the judgment must be affirmed. It is so ordered.